Filed 4/13/16  Watland v. Ocwen Loan Servicing CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JAMES A. WATLAND et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, et al.,<br><br>        Defendants and Respondents. | A139562<br><br>(Sonoma County<br>Super. Ct. No. SCV-252322) |

James A. Watland and Billi R. Watland appeal from a judgment of dismissal entered after the trial court sustained respondents' demurrer to their first amended complaint without leave to amend.  They contend the court erred, primarily because (1) two recorded assignments by Mortgage Electronic Registration Systems, Inc. (MERS), as nominee of the originating lender, are void because the assignments were executed after the originating lender ceased operations and after the closure of the assignee, a securitized trust; and (2) they have standing to challenge the assignments, even though they are not parties to the assignments or the securitization agreement.

We will affirm the judgment.

## I.  FACTS AND PROCEDURAL HISTORY

The Watlands filed their first amended complaint—the operative pleading in this appeal—in January 2013.

1

A.  Allegations of the First Amended Complaint

In July 2005, the Watlands obtained a $492,000 loan from WMC Mortgage Corp. (WMC), evidenced by an adjustable rate note that was secured against their home in Petaluma pursuant to a deed of trust.

The deed of trust, attached to the first amended complaint as an exhibit, authorized the "Lender" to, among other things, declare all amounts under the note due upon the borrowers' default, invoke a power of sale provision, and cause notice to be sent to the borrowers of the default and the Lender's election to sell the property.  The deed of trust identified the "Lender" to be WMC, but also provided that the Lender could transfer the note, or a partial interest in the note, without notice to the borrowers.

The deed of trust identified MERS as "a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns."  MERS was authorized "to exercise any or all of those interests [for Lender and Lender's successors and assigns], including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument."

In January 2007, WMC ceased operations.  Later in 2007, the servicer of the loan notified the Watlands that, pursuant to the terms of the note, the interest rate would adjust from 6.25 percent to 9.25 percent on August 1, 2007.

On November 29, 2007, the Watlands entered into a "Loan Modification Agreement," which was recorded in March 2008 (2008 Loan Modification).  The 2008 Loan Modification provided that it *amended* the note and deed of trust, identified the "Lender" as respondent "Deutsche Bank National Trust Company, as trustee under the Pooling and Servicing Agreement dated as of November 1, 2005, GSAMP Trust 2005-WMC2" (DBNTC as Trustee), identified MERS as the Mortgagee, and extended the 6.25 percent interest rate period until July 1, 2009. [1]

---

[1]  A copy of the 2008 Modification was submitted to the trial court with respondents' request for judicial notice in connection with their demurrer.  There is no dispute in this appeal that the 2008 Modification is the proper subject of judicial notice.

The Watlands defaulted on the modified loan in 2010 by failing to make payments.

In December 2011, Ocwen Loan Servicing, LLC (Ocwen), which began servicing the loan in September 2011, recorded an assignment of the deed of trust from MERS, as nominee for WMC and its successors and assigns, to DBNTC as Trustee (Assignment-1). A copy of the assignment was attached to the first amended complaint.

A notice of default and election to sell the property under the deed of trust was recorded in February 2012. The default was not cured, and a "Notice of Trustee's Sale" was recorded on May 25, 2012. The loan remained in default for failure to make payments.

In August 2012, a second assignment of the deed of trust was recorded, by which MERS, as nominee for WMC and its successors and assigns, again assigned all interest to DBNTC as Trustee (Assignment-2).

Against the backdrop of these allegations, the Watlands purported to state three causes of action: (1) cancellation of instruments, pursuant to Civil Code section 3412; (2) violation of Business and Professions Code section 17200 et seq.; and (3) declaratory relief. The gravamen of their claims was that Assignment-1 and Assignment-2 were void because they were executed after the originating lender (WMC) ceased operations; MERS did not hold an ownership interest in the note that it could convey to DBNTC as Trustee, MERS could not convey an interest in real property without disclosing its principal, and the assignments were signed by "robo-signers"; and, therefore, the assignments and notice of default should be cancelled, no interest under the note or deed of trust was ever transferred to DBNTC as Trustee, DBNTC as Trustee has no authority to foreclose, and no foreclosure should proceed. (The Watlands also argue that the assignments were void because they were executed after the closing date of the securitized trust (DBNTC as Trustee).)

---

Although the Watlands did not disclose the 2008 Modification in their first amended complaint, we mention it at this point so it can be understood in context.

B.  Respondents' Demurrer to the First Amended Complaint

In March 2013, DBNTC as Trustee and other respondents filed a demurrer to the Watlands' first amended complaint.  Respondents argued that the cause of action for cancellation of instruments failed because the Watlands lacked standing to challenge the assignments and, in any event, they acknowledged in the 2008 Modification that DBNTC as Trustee had become the "Lender" under the note and deed of trust.  For this reason, the Watlands' other claims failed as well.

The Watlands opposed the demurrer, insisting they had a right to challenge the assignments, and the assignments were invalid and fraudulent because MERS lacked authority to assign the deed of trust.

In May 2013, after a hearing, the trial court sustained respondents' demurrer to the first amended complaint without leave to amend.  The court rejected the Watlands' allegations that the assignments should be voided as fraudulent, because the Watlands failed to allege fraud with requisite specificity, they could not have justifiably relied on the purported assignments because they defaulted on the loan before the assignments were made, and they entered into the modification in which they recognized DBNTC as Trustee as the lender.  In addition, the court ruled there was no impropriety with the MERS assignments because, under the deed of trust, the Watlands had contractually authorized MERS to pursue foreclosure in the event of default and the deed of trust authorized MERS to execute the assignment as nominee on behalf of the original lender's successors and assigns.  Furthermore, the Watlands, as non-parties to the assignments, had no standing to challenge them.

In addition, the court denied leave to amend due to the Watlands' "contradictory positions across their verified pleadings."  The Watlands had asserted in their original complaint that DBNTC as Trustee had a duty to them as a party under the deed of trust, but subsequently claimed that DBNTC as Trustee never acquired any interest in the loan.

Judgment was entered, dismissing the entire action with prejudice.  This appeal followed.  According to respondents, the foreclosure sale has not been completed as of the date of the respondents' brief.

4

## II. <u>DISCUSSION</u>

In our de novo review of an order sustaining a demurrer, we assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law. (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 985–986.) We then determine if those facts are sufficient, as a matter of law, to state a cause of action under any legal theory. (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.)

In making this determination, we also consider facts of which the trial court properly took judicial notice. (E.g., *Avila v. Citrus Community College District* (2006) 38 Cal.4th 148, 165 fn. 12.) Indeed, a demurrer may be sustained where judicially noticeable facts render the pleading defective (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.), and allegations in the pleading may be disregarded if they are contrary to facts judicially noticed. (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 (*Hoffman*); *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265 (*Fontenot*) [in sustaining demurrer, court properly took judicial notice of recorded documents that clarified and to some extent contradicted plaintiff's allegations], disapproved on other grounds in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939 fn. 13 (*Yvanova*).)

In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error. Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879–880.) We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained. (*Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 946.)

### A. <u>The Watlands Do Not Establish Any Alleged Cause of Action</u>

The Watlands' first amended complaint purported to allege causes of action for cancellation of instruments under Civil Code section 3412, violation of Business and

Professions Code section 17200, and declaratory relief. The court's order sustaining respondents' demurrer explained why the Watlands failed to establish a cause of action under Civil Code section 3412, and, therefore, failed to establish any cause of action the Watlands had purported to assert.

The Watlands' briefs in this appeal do not explain how the allegations of their first amended complaint establish *all* the elements of their specified causes of action for cancellation of instruments under Civil Code section 3412, violation of Business and Professions Code section 17200, or declaratory relief. Instead, they address whether they have standing to challenge the assignments and urge that their action is in essence a wrongful foreclosure case. Accordingly, they fail to demonstrate that the court erred in sustaining respondents' demurrer with respect to their alleged causes of action.[2]

B. The Watlands Have No Cause of Action for Wrongful Foreclosure

The Watlands contend that the elements of a wrongful foreclosure cause of action are: "(1) the defendant caused an illegal, fraudulent, or willfully oppressive *sale* of the property pursuant to a mortgage or deed of Trust; (2) plaintiff suffered *prejudice* or harm; and (3) plaintiff *tendered* the amount of the secured indebtedness or is excused from tendering. (*Chavez v. IndiMac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112.)" (Italics added.) The allegations of their first amended complaint do not establish these elements.

_____

[2] Furthermore, the Watlands do not rebut the entirety of the trial court's reasoning in sustaining the demurrer. Civil Code section 3412 provides: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." The trial court concluded that the Watlands had failed to state a cause of action under this provision, in part because they asserted the assignments should be voided as fraudulent, but they failed to allege the fraud with requisite specificity; they could not have justifiably relied on the purportedly fraudulent assignments because they defaulted on the loan before the assignments were made; and they entered into the 2008 Modification in which they explicitly acknowledged that DBNTC as Trustee *was* the lender. The Watlands do not demonstrate that their allegations of fraud were sufficiently pled or otherwise establish any error in this aspect of the trial court's reasoning.

6

First, the Watlands' pleading does not allege that there has been a foreclosure *sale*. An unlawful or fraudulent sale is generally held to be a required element of the cause of action. (*Lona v. Citibank, N.A,* (2011) 202 Cal.App.4th 89, 112) If the foreclosure sale has *not* occurred, there is no sale to set aside, and the damages that would have arisen from a sale have not been incurred. For this reason, it is often said that there is no claim for wrongful foreclosure unless a foreclosure sale has taken place. (E.g., *Rosenfeld v. JP Morgan Chase Bank, N.A.* (2010) 732 F.Supp.2d 952, 961; *Vega v. JP Morgan Chase Bank, N.A.* (E.D. Cal. 2009) 654 F.Supp.2d 1104, 1113.)[3]

Second, the first amended complaint does not allege facts indicating the Watlands have been *prejudiced*. The Watlands' property has not been sold, and the Watlands do not cite any allegation that the foreclosure effort of DBNTC as Trustee, as opposed to WMC or any other lender, has caused them harm. (Accord *Yvanova, supra*, 62 Cal.4th at pp. 929, fn. 4, 937 [discussing prejudice with respect to standing, as opposed to prejudice as an element of a wrongful foreclosure tort].) In their reply brief, they speculate that "if an invalid assignment had not occurred, the original lender may have exercised more leniency with missed payments or worked out a loan modification plan with the homeowner," or possibly "another lender would have engaged in a slower process that would have given the homeowner more time to improve their financial situation or seek alternatives to avoid foreclosure." But there is no such *allegation* in their first amended complaint, and their briefs do not articulate any specific facts they could allege in this

---

[3]   Although not mentioned by the Watlands, courts have allowed a pre-sale wrongful foreclosure claim—at times called an *attempted* wrongful foreclosure—to the extent it sought *injunctive* relief (such as a postponement of the foreclosure sale) in order to prevent the sale and resulting harm. (*Nguyen v. JP Morgan Chase Bank N.A.* (N.D.Cal. May 15, 2013, No. 12-CV-04183) 2013 WL 2146606, at p. *4 [nonpub.]; *Vong v. Bank of America, N.A.* (E.D.Cal. May 22, 2013, No. CIV.S–12–1860 LKK/DAD) 2013 WL 2254243, at p. *8 & fn. 20 [nonpub.]) The prayer for relief in the Watlands' first amended complaint may be construed to seek an order restraining foreclosure efforts; however, they still fail to state a cause of action, since they fail to allege the other necessary elements.

7

regard. Indeed, the Watlands stopped making payments by 2010, and they defaulted on their loan months before the assignments were recorded.

Third, the first amended complaint does not allege there has been a *tender* of the secured indebtedness or that they should be excused from this requirement. In short, the Watlands' first amended complaint does not allege facts supporting a cause of action for wrongful foreclosure, and they do not establish any basis for granting leave to amend.

Although this suffices to justify an affirmance of the judgment, we turn next to the arguments the Watlands do make in their briefs, to provide additional reasons their appeal is meritless.

C. The Watlands Cannot Demonstrate That the Assignments Are Void

As the basis for the claims alleged in their first amended complaint, as well as any wrongful foreclosure or other cause of action, the Watlands contend the assignments of the deed of trust to DBNTC as Trustee of the securitized trust are void because MERS executed the assignments after WMC ceased operations and after the closure of the trust. Therefore, they urge, DBNTC as Trustee has no authority to foreclose. Their arguments fail as a matter of law.

1. The Watlands Cannot Now Dispute DBNTC as Trustee's Authority

The Watlands' briefs all but ignore a fundamental reason they cannot establish that DBNTC as Trustee lacks an interest in the property and the authority to foreclose: the Watlands represented their understanding that DBNTC as Trustee *was*, in fact, the "Lender" for purposes of the amended note and deed of trust, before their default and the foreclosure proceedings.

The 2008 Modification, signed by the Watlands, explicitly defined DBNTC as Trustee *as the "Lender"* and memorialized the amendment of the deed of trust accordingly. The Watlands are bound by this recital of fact. (Evid. Code, § 622 ["The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto . . . . "]; see *Estate of Wilson* (1976) 64 Cal.App.3d 786, 800–802.)

8

Indeed, by their execution of the document affirming DBNTC as Trustee to be the Lender, the Watlands obtained for themselves an extension of the 6.25 percent interest rate rather than having the interest rate adjust upward to 9.25 percent, and proceeded to make payments pursuant to the modification. Having received the benefits of the 2008 Modification by contracting with DBNTC as Trustee, they cannot now be heard to claim that DBNTC as Trustee is *not* the Lender and has no interest in the note and deed of trust.

And if that were not enough, the 2008 Modification renders moot any issue as to the validity of the subsequently recorded assignments. The 2008 Modification establishes that DBNTC as Trustee became the Lender before the Watlands' default in 2010, and the Watlands do not allege that DBNTC as Trustee *lost* its interest in the note and deed of trust between that time and the foreclosure proceedings. The validity of the later purported assignments to DBNTC as Trustee are therefore irrelevant. (*Hoffman*, *supra*, 179 Cal.App.4th at p. 400 [judicially noticed fact precludes contrary allegation in pleading for purposes of demurrer]; *Fontenot*, *supra*, 198 Cal.App.4th at p. 265.)

The Watlands' briefs offer no rebuttal to these points, except to claim in their reply brief that they executed the 2008 Modification "under duress" and have "since learned there was no legal basis by which [DBNTC as Trustee] could have acquired" their loan. Tellingly, however, there is no such allegation in their first amended complaint, and the Watlands do not establish that they could, or at this point should be allowed to, amend their pleading in this regard. Even at the hearing on the demurrer, after respondents' counsel raised the issue of the 2008 Modification, the Watlands' counsel did not utter a peep about the document being a product of duress or otherwise unenforceable.

In particular, the Watlands have not alleged facts from which it could reasonably be inferred that DBNTC as Trustee had not lawfully acquired the loan by the time of the 2008 Modification. The 2008 Modification demonstrates that DBNTC as Trustee knew about the terms of the note and had become the note holder; with the transfer of the note to DBNTC as Trustee, the deed of trust was automatically assigned to DBNTC as Trustee as a matter of law, without the need for the assignment to be recorded. (*Fontenot, supra*,

9

198 Cal.App.4th at p. 272 ["plaintiff was required to allege not only that the purported MERS assignment was invalid, but also that [the purported assignee] did not receive an assignment of the debt in any other manner"]; *Yvanova, supra,* 62 Cal.4th at p. 927 (*Yvanova*) ["The deed of trust . . . is inseparable from the note it secures, and follows it even without a separate assignment."]; Civ. Code, § 2936 ["The assignment of a debt secured by mortgage carries with it the security."].) There is no factual allegation leading to the conclusion that the note, and therefore the deed of trust, had not been assigned to DBNTC as Trustee before the 2008 Modification, regardless of the viability of the assignment documents recorded in 2011 and 2012.

Based on the appellate record and the briefing in this case, the Watlands cannot prove that DBNTC as Trustee lacks authority to foreclose. This in itself warrants an affirmance of the judgment of dismissal.

### 2. The Watlands Lack Standing to Challenge the Assignments

As yet another reason for affirming the judgment, as a matter of law the Watlands cannot challenge the sufficiency of the assignments to DBNTC as Trustee, or the authority of DBNTC as Trustee to initiate the foreclosure, because they have no standing to do so.

The nature of California's statutory nonjudicial foreclosure process precludes a court action, before the property has been sold, to determine whether the foreclosing party is authorized to foreclose as the one with the secured interest in the property—at least in the absence of specific factual allegations showing why the foreclosure was not initiated by the correct party. (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511–512 (*Jenkins*) ["California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure."], disapproved on other grounds in *Yvanova, supra*, 62 Cal.4th at p. 939, fn. 13; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155 (*Gomes*) [presale actions to determine a nominee's

10

authorization to proceed with foreclosure "would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures"]; *Robinson v. Countrywide Home Loans, Inc.*(2011) 199 Cal.App.4th 42, 46 [no legal basis for claim seeking damages or declaratory relief to determine whether foreclosing party had authority to foreclose, because Civil Code sections 2924–2924k do not provide for a preemptive suit challenging the foreclosing party's authority].)

The Watlands' arguments to the contrary are unpersuasive.

### a. The Watlands Have Not Alleged any Exception

*Gomes* left open the possibility that a borrower might obtain standing by alleging specific facts indicating the foreclosure was not initiated by the correct party. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1155.) Although the Watlands contend that the assignments were made by MERS after WMC ceased operations and after the securitized trust (DBNTC as Trustee) closed, their contentions are insufficient.

As to their allegation that the recorded assignments were made after WMC ceased operations, the deed of trust authorized MERS not just to act on behalf of the original Lender WMC, but to act on behalf of the Lender's successors and assigns: MERS may "exercise any or all of those interests [for Lender *and Lender's successors and assigns*], including, but not limited to the right to foreclose and sell the Property." (Italics added.) The first amended complaint does not allege any specific facts showing that MERS was not acting on behalf of a "successor[] or assign[]" of WMC when it executed the assignments.

As to the Watlands' contention that the recorded assignments were signed after the closure of the securitized trust, their argument fails for two reasons. First, the Watlands did not make this allegation in their first amended complaint or rely on it in the trial court. Second, as discussed *ante*, an assignment may be made *without* the recordation of an assignment of the deed of trust, and the Watlands do not allege any *facts* indicating that the note and deed of trust were not actually assigned to (or obtained by) DBNTC as

11

Trustee before the 2008 Modification and the foreclosure proceedings. (*Fontenot, supra,* 198 Cal.App.4th at pp. 271–272; *Yvanova, supra,* 62 Cal.4th at p. 927; Civ. Code, § 2936.)[4]

### *b.* Glaski *and* Yvanova

In *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*), the borrower alleged that a foreclosure sale was wrongful because the transfer of his loan to a securitized trust occurred after the trust's closing date. (*Id*. at pp. 1093–1095.) The court held that the borrower had standing to contest the assignment to the trust, concluding an untimely assignment would render it void (rather than voidable) under New York law, under which the investment trust was formed. (*Id*. at pp. 1094–1098.)

*Glaski* is inapposite. *Glaski* was a *post*foreclosure case, in which the borrower sought to set aside a foreclosure sale; here, the Watlands seek to assert a *pre*foreclosure sale cause of action. *Glaski* did *not* decide whether a preforeclosure preemptive action would be available, or address *Gomes*'s holding in this regard. (See *Glaski*, *supra*, 218 Cal.App.4th at pp. 1098–1099; *Kan v. Guild Mortgage Company* (2014) 230 Cal.App.4th 736, 743–744 [distinguishing *Glaski* on this ground].)

*Yvanova* is also unhelpful to the Watlands. In *Yvanova*, the plaintiff borrower alleged that the assignment of the deed of trust to the foreclosing party was void because, by the date of the recorded assignment, the assignor's assets had already been transferred and (as argued here and in *Glaski*) the investment trust had already closed. (*Yvanova, supra*, 62 Cal.4th at p. 925.) The trial court sustained a demurrer and denied leave to amend; the court of appeal concluded leave to amend was not warranted because the borrower, as a third party to the assignment, had no standing to enforce its terms. (*Id*. at p. 926.) Our Supreme Court granted review, limiting the question to whether a borrower

---

[4] The Watlands argue that they have standing to enforce the terms of the trust's pooling and securitization agreement because courts in *other* contexts allowed plaintiffs to assert tort claims when they were not in privity of contract with the tortfeasor. (Citing *Barrera v. State Farm Mut. Auto. Ins. Co.* (1969) 71 Cal.2d 659, 675–676.) They urge that whether a plaintiff may proceed on this basis involves consideration of factors set forth in *Biakanja v. Irving* (1958) 49 Cal.2d 647. Their argument is unpersuasive.

in a foreclosure action may challenge an assignment as void. (*Ibid*.) The Supreme Court held that an allegation that the assignment of the deed of trust was void, and not merely voidable, would provide standing for a borrower to challenge the right of a purported assignee to foreclose on the property, and therefore support an action for wrongful foreclosure. (*Id*. at pp. 923, 939.) However, the court admonished: "Our ruling in this case is a narrow one. We hold only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment. We *do not hold or suggest* that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed. *Nor do we hold or suggest* that plaintiff in this case has alleged facts showing the assignment *is* void or that, to the extent she has, she will be able to prove those facts. Nor, finally, in rejecting defendants' arguments on standing do we address any of the substantive elements of the wrongful foreclosure tort or the factual showing necessary to meet those elements." (*Id*. at p. 924, italics added; see *id*. at p. 934.)

*Yvanova* is inapposite to this case for at least two reasons. First, *Yvanova* applies only to a borrower who has suffered a nonjudicial foreclosure *sale*, and it disavows any suggestion that a borrower may sue the foreclosing party before the foreclosure sale on this ground. Here, the Watlands have not suffered a foreclosure sale.[5]

Second, *Yvanova* applies only to allegations that an assignment of the deed of trust is *void*. Although the court in *Yvanova* noted *Glaski'*s view that an assignment dated after the closure of the assignee investment trust would render the assignment void under applicable New York law, *Yvanova* did *not* affirm *Glaski* in this respect. (*Yvanova*, *supra*, 62 Cal.4th at p. 931.)[6] Moreover, courts other than *Glaski* have held that the fact

---

[5]     Our Supreme Court granted review in a preforeclosure case in *Keshtgar v. U.S. Bank, N.A*.,(2014) 226 Cal.App.4th 1201, review granted October 1, 2014, S220012, and deferred the matter pending the disposition in *Yvanova*.

[6]     The court in *Yvanova* stated: "On this point, *Glaski* held allegations that the plaintiff's note and deed of trust were purportedly transferred into the trust after the

that a recorded assignment is dated after the closure of the assignee investment trust would render the assignment voidable, not void. (E.g., *Calderon v. Bank of Am., N.A.* (W.D.Tex. 2013) 941 F.Supp.2d 753, 766–767; *Sandri v. Capital One, N.A. (In re Sandri),* (Bankr. N.D. Cal. 2013) 501 B.R. 369, 375–376.) Indeed, *Glaski*'s interpretation of New York law has been rejected by the Second Circuit Court of Appeals. (*Rajamin v. Deutsche Bank Nat'l Trust Co*. (2d Cir. 2014) 757 F.3d 79, 88–90 [borrower has no standing to challenge an assignment allegedly in violation of a pooling and servicing agreement governed by New York law, rejecting *Glaski*'s view that the violation would render the assignment void rather than voidable].) We conclude the Watlands have not alleged facts from which it could be inferred that the assignment to DBNTC as Trustee is void.

### c. The Language of the Deed of Trust Does Not Provide Standing

The Watlands argue that the power of sale is created by contract, not statute, so whether they have standing to challenge a party's authority to foreclose turns on the language of the contract, not the foreclosure statutes. In other words, a nonjudicial foreclosure could proceed in any manner the parties agree, notwithstanding the statutes authorizing the nonjudicial foreclosure procedure. The Watlands provide no legal authority for this proposition; to the contrary, the deed of trust language is subject to, and must be interpreted in light of, the statutory scheme. (See, e.g.*, Jenkins*, *supra*, 216 Cal.App.4th at pp. 509–510 ["[T]he [statutory] provisions setting forth California's nonjudicial foreclosure scheme [citations] ' " cover every aspect of [the] exercise of [a] power of sale contained in a deed of trust. " ' "].)

---

trust's closing date were sufficient to plead a void assignment and hence to establish standing. (*Glaski*, [*supra*, 218 Cal.App.4th] at pp. 1096–1098.) This last holding of *Glaski* is not before us. On granting plaintiff's petition for review, we limited the scope of our review to whether 'the borrower [has] standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void.' We did not include in our order the question of whether a postclosing date transfer into a New York securitized trust is void or merely voidable, and though the parties' briefs address it, we express no opinion on the question here." (*Yvanova, supra*, 62 Cal.4th at p. 931.)

In any event, the language of the deed of trust in this case cannot reasonably be interpreted as the Watlands suggest. They point to language that the lender must give notice to the borrower before accelerating the loan and "inform Borrower of the right to reinstate after acceleration and the right *to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.*" (Italics added.) But this provision empowers the borrower to assert the nonexistence of a default, or legal defense, not to subvert the statutory process by claiming the foreclosing party is not the proper party to foreclose. In addition, the Watlands point to language precluding the borrower and lender from commencing a judicial action that arises from the other party's actions "pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed, by reason of this Security Instrument, until such Borrower or Lender has notified the other party . . . of such breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action." However, nowhere does that language state that the borrower can sue over whether the foreclosing party is the one with the secured interest entitling it to foreclose.

The Watlands next argue that the deed of trust is an adhesion contract, and there is no conspicuous, plain and clear language depriving a borrower of standing to challenge the transfer of the loan. (Citing *Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433, 1445–1450 [under language of particular deed of trust and other documents, no clear and unambiguous expression of mutual intent to cross-collateralize two loans].) However, they do not provide any authority that a deed of trust must spell out a borrower's lack of standing to interrupt the nonjudicial foreclosure process with a judicial action to challenge an assignment.

### d. Newly Enacted Statutes Do Not Convey Standing

The Watlands direct us to certain provisions of the "Homeowner Bill of Rights," which took effect on January 1, 2013. Since the Watlands' loan went into foreclosure proceedings long before this date, these provisions do not apply, but the Watlands urge that they reflect a policy that existed before their enactment. In any event, the allegations of the first amended complaint do not set forth any violation.

15

Civil Code section 2923.55 requires mortgage servicers, before a notice of default is recorded, to notify the borrower in writing of the *right to request* a copy of the promissory note, deed of trust, and any assignment of the deed of trust "required to demonstrate the right of the mortgage servicer to foreclose." (Civ. Code, § 2923.55, subd. (b).) There is no allegation, however, that the Watlands made such a request.

Civil Code section 2924, subdivision (a)(6) provides: "No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process *unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest*. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest." (Italics added.) Here, however, the 2008 Modification establishes that DBNTC as Trustee is the holder of the beneficiary interest, and there is no indication the foreclosure was commenced by an entity not authorized by the statute.

None of the provisions cited by the Watlands, nor the policy reflected in these provisions, gives them standing to challenge DBNTC as Trustee's authority to foreclose in a preemptive preforeclosure sale lawsuit.

For all of the foregoing reasons, the trial court did not err in sustaining the demurrer to the first amended complaint.[7]

---

[7] In their opening brief in this appeal, the Watlands also challenge the validity of the substitution of trustee. The deed of trust allowed the trustee—Westwood Associates, a California Corporation—to initiate and conduct a foreclosure, and allowed the lender to appoint a successor trustee by a recorded instrument. The Watlands urge that the original lender (WMC) never executed a substitution of trustee, and the substitution of trustee by Deutsche Bank as Trustee was void because it was signed by Ocwen as its attorney in fact. However, the Watlands do not establish that an attorney in fact cannot sign a substitution of trustee on behalf of its principal; nor do they establish that they have standing to challenge it.

16

D.  Denial of Leave to Amend

The Watlands contend in their opening brief that they could amend their pleading to allege a claim for rescission under the Truth in Lending Act (15 U.S.C. § 1635(a)). They have not established their entitlement to amend on this or any other basis, or demonstrated an abuse of discretion in the trial court's denial of leave to amend.

## III.  DISPOSITION

The judgment is affirmed.

_____
NEEDHAM, J.

We concur.

_____
JONES, P.J.

_____
BRUINIERS, J.

(A139562)